**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DALE FOURNIER *et al.*,

          *Plaintiffs*,

    v.

CLARK CONSTRUCTION GROUP, LLC,
*et al.*,

          *Defendants*.

No. 18-cv-2854 (DLF)

<u>**MEMORANDUM OPINION AND ORDER**</u>

Dale Fournier, a crewmember on a construction site on The Wharf, was injured during a crane-operated lift incident. He now brings this negligence action against the contractors that worked at the site, Clark Construction Group, LLC, Cianbro Corporation, and Cianbro Constructors, LLC. His wife Catherine Fournier also asserts a claim for loss of consortium. Before the Court is the defendants' Joint Motion for Summary Judgment, Dkt. 34. For the reasons that follow, the Court will deny the motion.

**I.      BACKGROUND**

In 2013, Dale Fournier (Dale) began working on a construction project at The Wharf in Washington, D.C. for E.C. Korneffel Corporation (ECK), a subcontractor to defendant Clark. Defs.' Statement of Material Facts ¶¶ 1–2, 6, Dkt. 34-3.[1] On September 17, 2015, he was working as a "rigger and signaler," loading and attaching 16,000-pound, T-shape concrete panels onto a flatbed truck, and then signaling to the crane operator when to lift them. *Id.* ¶¶ 11–12, 15–

---

[1] The Court cites to Defendants' Statements of Material Facts if a fact is undisputed. If a fact is disputed, the Court will indicate as such.

16.  Michael Cavaliere, an employee of defendant Cianbro, was the crane operator at the time. *Id.* ¶ 12.  The lift was performed "in the blind," meaning that Cavaliere could not see Dale on the back of the truck.  *Id.* ¶ 13.  Dale instead had to signal him over radio.  *Id.*  Because Cavaliere could not see Dale, he had to rely on Dale's signaling over radio to know when to start and stop the lift.  *Id.* ¶ 26.

To rig the load, Dale would stand on the panel atop the truck bed to attach the main and auxiliary lines used to lift it.  *Id.* ¶ 17.[2]  After attaching the lines, he would instruct Cavaliere to lift each line (first the main, and then the auxiliary, line).  *Id.*; Pls.' Responses to Defs.' Statement of Facts ¶ 17.  The parties dispute the implications of this instruction: The defendants claim that Dale would tell the operator to lift the lines until the panel was suspended approximately one to four inches in the air.  Defs.' Statement of Material Facts ¶ 17.  The plaintiffs say that the lines were to be pulled up slightly to remove slack such that the panel could subsequently be lifted safely off the truck.  Pls.' Responses to Defs.' Statement of Facts ¶ 17.

During one of the lifts, Dale fell off the panel to the ground.  Defs.' Statement of Material Facts ¶ 36.  The parties disagree about the circumstances surrounding this incident.  According to the defendants, Dale instructed Cavaliere to lift the panel one to four inches off the truck bed, and that he continued to stand on the panel while it was thus "suspended."  *Id.* ¶¶ 15, 17–18, 23–24.  They point to Dale's own testimony that he stood on the panel until it was lifted one to four inches.  *Id.* ¶¶ 17–18 (citing Defs.' Mot. for Summ. J., Ex. A (Fournier Dep.) at 37:1–38:7, 39:20–40:5).  They also claim that this is corroborated by Dale's coworker (and eyewitness) Charles Giesin.  Defs.' Reply in Support of Statement of Material Facts, Reply in Support of ¶

---

[2] The plaintiffs purport to dispute this fact, but they do not dispute that Dale stood on top of the panel prior to the incident to attach the main and auxiliary lines as part of the rigging process. Pls.' Responses to Defs.' Statement of Facts ¶ 17, Dkt. 39-1.

17, Dkt. 42-1 (citing Defs.' Reply in Support of Mot. for Summ. J., Ex 2 (Giesin Dep.) at 42:8–18, Dkt. 38-3). And they cite expert testimony that Dale would not have been injured had he not been standing on the load when it was lifted. Defs.' Statement of Material Facts ¶ 35.

The plaintiffs, however, insist that Dale never signaled to Cavaliere to actually hoist the load while Dale was standing on it. Pls.' Responses to Defendants' Statement of Facts ¶ 18. Instead, they assert that Dale, while he was on the panel, simply instructed Cavaliere to slightly lift the lines to remove slack so the lift could then be safely executed. *Id.* (citing Pls.' Opp'n, Ex. G (Fournier Dep.) at 41:8–12, Dkt. 36-10). And they claim that defendant Clark approved this technique. *Id.* ¶ 19. They further point to expert testimony suggesting that Dale did not instruct Cavaliere to suspend the load when he was standing on it—and that the panel was indeed not suspended at the time of the fall. Pls.' Additional Material Facts in Dispute ¶¶ 15–16, Dkt. 39-1. Finally, they say that it was Cavaliere who continued to lift the main line even though Dale told him to stop. *Id.* ¶ 13.

On September 10, 2018, the plaintiffs filed a complaint in the Superior Court of the District of Columbia. *See generally* Compl., Dkt. 1-1. On December 5, 2018, the defendants removed the action to this Court. Notice of Removal, Dkt. 1. On May 17, 2021, the defendants filed a joint motion for summary judgment, arguing that Dale was contributorily negligent as a matter of law and that his actions were a superseding, intervening cause of his accident, dooming Catherine's loss of consortium claim. *See* Defs.' Mot. for Summ. J. at 1–2, Dkt. 34. This motion is now ripe for review.

## II.    LEGAL STANDARD

Under Rule 56, summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48

(1986). A "material" fact is one that could affect the outcome of the lawsuit. *See Liberty Lobby*,

477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine"

if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving

party. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. In reviewing the record,

the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not

make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*,

530 U.S. 133, 150 (2000).

A party "opposing summary judgment" must "substantiate [its allegations] with

evidence" that "a reasonable jury could credit in support of each essential element of [its]

claims." *Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015). The moving party is

entitled to summary judgment if the opposing party "fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.   ANALYSIS

The defendants argue that Dale's decision to stand on top of the panel while directing the

operator to move and suspend it made him contributorily negligent as a matter of law. *See* Defs.'

Mot. for Summ. J. at 6–17. Therefore, they claim that he is barred from recovery because "[t]he

District of Columbia is one of the few jurisdictions in which the claimant's contributory

negligence can act as a complete defense to the defendant's liability for negligence." *Jarrett v.

Woodward Bros.*, 751 A.2d 972, 985 (D.C. 2000); *see* Defs.' Mot. for Summ. J. at 8.[3] Under

---

[3] The incident in question took place in the District of Columbia, so D.C. law governs this
diversity suit for negligence. *See Boff v. Inter-Cont'l Hotels Corp.*, No. 17-cv-1523, 2018 WL
6329451, at *2 (D.D.C. Dec. 4, 2018).

D.C. law, a plaintiff is contributorily negligent when he fails "to act with the prudence demanded of an ordinary reasonable person under like circumstances." *Stager v. Schneider*, 494 A.2d 1307, 1311 (D.C. 1985); *see also Weil v. Seltzer*, 873 F.2d 1453, 1457 (D.C. Cir. 1989) ("[C]ontributory negligence operates as a defense . . . when a party knows or by the exercise of ordinary care should have known a particular fact or circumstance and should have acted upon the fact or circumstance with reasonable care for his own safety.").  However, "[i]ssues of contributory negligence, like issues of negligence, present factual questions for the trier of fact unless the evidence is so clear and undisputed that fair-minded men can draw only one conclusion." *Lyons v. Barrazotto*, 667 A.2d 314, 322 (D.C. 1995) (internal quotation and alterations omitted).  As a result, it is the "rare and exceptional case in which the evidence is so clear that the Court must find . . . contributory negligence as a matter of law." *Harrison v. United States*, No. 16-cv-1829, 2018 WL 4680204, at *3 (D.D.C. Sept. 28, 2018).  Thus, "[i]ssues of negligence and contributory negligence are rarely appropriate for summary judgment." *Becker v. Lederer*, No. 15-cv-44, 2016 WL 1452331, at *4 (D.D.C. Apr. 13, 2016).

Here, the parties dispute various critical facts—was Dale standing on a suspended panel when he fell, and did he instruct Cavaliere to move the load?  The defendants rely on Dale's deposition testimony that if the rigging process were "done properly," then he and his coworker "would bring it about an inch off the bed, 1 to 3 inches, 1 to 4 inches, settle the load and then I would step off and we would handle it with tag lines."  Defs.' Mot. for Summ. J., Ex. A (Fournier Dep.) at 39:20–40:5.  So they assume that Dale was intentionally standing on a panel as it was being suspended, *see* Defs.' Mot. for Summ. J. at 4, which was a safety hazard, *see* Defs.' Statement of Material Facts ¶¶ 19, 28, 29, 31.  But the plaintiffs insist that during this particular incident, Dale was *not* standing on a suspended load.  Pls.' Additional Material Facts

in Dispute ¶ 15.  Instead, pointing to expert testimony, they claim that one side of the panel was still on the truck bed, as Dale had not yet called for a signal to move the auxiliary line.  *See* Pls.' Opp'n at 14–16, Dkt. 36-1 (citing Pls.' Opp'n, Ex. E (Merrill Dep.) at 87–88).  And while the defendants claim that Dale signaled to Cavaliere to *move* the load, *see* Defs.' Mot. for Summ. J. at 10, the plaintiffs say that Dale told him only to *slightly lift the lines* to remove slack, consistent with industry practice, *see* Pls.' Opp'n at 16–21 (citations omitted).  These are key disputes for the factfinder, not this Court.

The defendants resist this conclusion by arguing that the plaintiffs cannot create a genuine dispute of material fact by pointing to an expert who did not witness the incident and contradicts the plaintiff's own testimony.  *See* Defs.' Amended Reply at 2–3, Dkt. 41.  But they cite no authority for this proposition.  Indeed, this Court has suggested the opposite.  *See Boff*, 2018 WL 6329451, at *7 (finding that a conflict between the plaintiff's eyewitness deposition testimony and expert testimony "creates a genuine and material issue of fact").  Plus, Dale's testimony does not necessarily conflict with the expert's, as Dale said that under proper circumstances—not necessarily on this occasion—the load would have been fully lifted one to four inches in the air while he stood on it.  Defs.' Mot. for Summ. J., Ex. A (Fournier Dep.) at 39:20–40:5.  Accordingly, there exists a genuine dispute of material fact as to Dale's actions, and their reasonableness under the circumstances.  The defendants "provide no persuasive reason to take th[ose] quintessentially factual question[s] away from the jury."  *Boff*, 2018 WL 6329451, at *6.  Thus, the Court cannot dismiss the plaintiffs' negligence and loss of consortium claims.[4]

Accordingly, it is

---

[4] The Court need not reach the plaintiffs' argument that their negligence *per se* claims survive even upon a finding of contributory negligence as a matter of law.  *See* Pls.' Opp'n at 43–49.

      **ORDERED** that the defendants' Joint Motion for Summary Judgment, Dkt. 34, is

**DENIED**.

      **ORDERED** that the parties shall file a joint status report on or before April 11, 2022

indicating whether the parties request a referral for mediation before a Magistrate Judge or

through the Circuit Executive's Office and proposing a schedule for further proceedings,

including at least three possible dates for a pretrial conference.

 

DABNEY L. FRIEDRICH
United States District Judge

March 31, 2022